IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZORAIDA G.,[1] | ) |
| | ) |
|     **Plaintiff,** | ) |
| | )   **Case No. 22-cv-00983** |
|     v. | ) |
| | )   **Honorable Beth W. Jantz** |
| **MARTIN J. O'MALLEY,** | ) |
| **Acting Commissioner of Social Security,**[2] | ) |
| | ) |
|     **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Zoraida G.'s application for Disability and Disability Insurance Benefits ("DIB"). The Parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security (dkt. 12) is GRANTED and the Commissioner's Motion for Summary Judgment (dkt. 17) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.
[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley has been substituted for his predecessor.

**BACKGROUND**

I.     **Procedural History**

On July 21, 2017, Plaintiff completed her application for disability and DIB, alleging disability beginning May 30, 2015. R. 15. Plaintiff's claims were denied initially, upon reconsideration, and in a May 16, 2019 decision that followed a hearing with an Administrative Law Judge ("ALJ"). R. 15. After the Appeals Council denied Plaintiff's request for review, Plaintiff sought review of the decision in this Court and the decision was remanded upon agreement for further proceedings. R. 1-6, 461. A second hearing before an ALJ was held, and Plaintiff's claims were again denied. R. 361-428. Plaintiff now seeks review of the Commissioner's final decision denying her claims.

II.    **The ALJ's Decision**

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2020, making the relevant period from May 30, 2015, through December 31, 2020. R. 366. The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. R. 366-83. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the relevant period. R. 366-67. At step two, the ALJ concluded that Plaintiff had the following severe impairments: eczema and anxiety. R. 367. The ALJ concluded at step three that the impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. R. 367-70. Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work except that she: can frequently use hand controls bilaterally; can frequently handle, finger, and feel bilaterally; can frequently climb ladders, ropes, and scaffolds; can frequently kneel and crawl; should not be exposed to

unprotected heights; can have frequent exposure to moving mechanical parts and motor vehicle operation; should not be required to immerse her skin in water any more than occasionally during the day and only for a few minutes at a time; will occasionally need to don protective gloves throughout the day or week; is limited to semi-skilled work, which is described as less complex than skilled work but more complex than unskilled work; and can have frequent contact with coworkers and supervisors, and occasional contact with the public. R. 370-80. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured. R. 381. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 382-83. The ALJ then concluded that Plaintiff was not disabled under the Social Security Act. R. 383.

## DISCUSSION

### I. Legal Principles

Under the Social Security Act, a person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which they claim disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §416.920(a). "A finding of disability requires an affirmative answer at

3

either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a

4

decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**II.     The ALJ reversibly erred in failing to properly evaluate the medical opinion of Dr. James Goebel, PhD.**

Among other arguments, Plaintiff argues that the ALJ reversibly erred by failing to properly evaluate the medical opinion of Dr. James Goebel, PhD ("Dr. Goebel"). Dkt. 12 at 4-8; dkt. 19 at 1-4. After a review of the record and the briefs submitted by the Parties, the Court agrees that the ALJ did not sufficiently evaluate Dr. Goebel's opinion. Because this error alone warrants remand, the Court does not reach Plaintiff's additional arguments.

**A. Dr. Goebel's Opinion**

In September of 2017, Dr. Goebel conducted a psychological consultative exam of Plaintiff at the request of the state agency. R. 330-333. Following the exam, he prepared a report titled "Mental Status Evaluation." R. 330-33. In his report, Dr. Goebel recounted Plaintiff's account of her symptoms, which included severe eczema, constant itching, pain, irritability, trouble concentrating on conversations, and being overwhelmed. R. 331-32. He stated that she "appeared to be a reliable informant." R. 332. Dr. Goebel noted that she was "friendly, pleasant and talkative," but had "poor eye contact." R. 331-32. Dr. Goebel asked Plaintiff to answer questions related to her recall, thinking, judgment, and mental capacity. R. 332-333. For example, he asked Plaintiff to recall three of three objects after a five-minute delay (which she did) and asked Plaintiff to name five major U.S. cities (which she did not do). R. 332-33. Dr. Goebel found that Plaintiff's intellectual level was in the average range and diagnosed her with generalized anxiety disorder and insomnia. R. 333. Regarding Plaintiff's ability to do work-related activities, Dr. Goebel found that she was: not limited in understanding and memory; markedly impaired in sustained

concentration and persistence; and moderately impaired in social interaction and adaptation. R. 333. The ALJ did not adopt Dr. Goebel's opinion that Plaintiff was markedly impaired in sustained concentration and persistence, and instead found that she was only moderately impaired. R. 369-70, 379-80. The ALJ found that Dr. Goebel's opinion was "less persuasive." R. 379-80.

### B. Analysis

As the Seventh Circuit has noted, "Rejecting or discounting the opinion of the agency's own examining physician…can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley*, 758 F.3d at 839. Here, for the reasons below, the ALJ did not provide a sufficient explanation for discounting Dr. Goebel's opinion, even under the deferential minimal articulation standard.

In her discussion of Dr. Goebel's opinion, the ALJ first stated that it was "less persuasive" because it "essentially is a broad statement that does not correlate to any specific work limitations." R. 379. This observation does not support a finding that Dr. Goebel's opinion should have been given less weight, however. As an initial matter, Dr. Goebel specifically noted that Plaintiff's marked impairment in sustained concentration and persistence was regarding her "work-related activities." R. 333. Additionally, a limitation in sustained concentration and persistence logically relates to work limitations – for example, the amount of time a person can stay on task or the skill level of work that a person can perform in a work setting. The ALJ herself considered Plaintiff's ability to concentrate when she determined Plaintiff's RFC: "Her reports of reduced concentration due to irritability and her anxiety was [sic] considered in limiting her to semi-skilled work." R. 369-70. The Court cannot see how Dr. Goebel's findings were necessarily too broad to correlate to any specific work limitations where the ALJ herself concluded that reduced concentration led to a work limitation.

6

Second, the ALJ stated that Dr. Goebel's opinion was "inconsistent with his exam of the claimant that day and his estimation of the claimant having intelligence in the average range." R. 379-80. The ALJ went on to recite some of the findings of the exam: "she was able to recite current news, recent US presidents, name some cities in the U.S. (not five)[3], perform simple multiplication calculation, recall three of three objects after five-minute delay, and recall six digits forward (only two backward). Again, her difficulties on the exam that day that [sic] also include not correctly naming the president during the civil war and insufficient abstract thinking which do not support a marked limitation in sustained concentration and persistence." R. 380. But this summary of some of the exam findings did not explain *how* the findings were inconsistent with Dr. Goebel's opinion. R. 79-80. Dr. Goebel, a licensed clinical and social psychologist, conducted the exam and concluded that the findings supported a marked limitation in sustained concentration and persistence. R. 333. The Court cannot see why this opinion was necessarily inconsistent with the exam findings cited by the ALJ. For example, the ALJ did not explain how insufficient abstract thinking could not support a marked limitation in sustained concentration and persistence, nor did she explain why someone with average intelligence could not have the limitations about which Dr. Goebel opined. R. 380. Without explaining *how* Dr. Goebel's exam findings were inconsistent with his opinion, it appears that the ALJ "improperly played doctor" when she interpreted his exam findings herself. *See Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("Thus, the ALJ improperly played doctor when he ignored expert opinions to arrive at his own, incorrect, interpretation of the medical evidence."). The ALJ was not permitted to come to her own conclusion about what Dr. Goebel's exam results meant, and thus her finding of an inconsistency

---

[3] The ALJ also did not mention that Plaintiff also took a "long pause" between naming the third and fourth city. R. 333.

7

between the exam and Dr. Goebel's opinion was an insufficient reason to discount that opinion. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves…The ALJ's finding of a mismatch between the objective evidence and the [doctor's] opinion failed to heed that principle.") (citations omitted).

   Third, the ALJ assigned less weight to Dr. Goebel's opinion because in the ALJ's view, Dr. Goebel reviewed minimal medical evidence and, therefore, the ALJ concluded that his opinion was based mostly on Plaintiff's own "extreme" allegations. R. 380. But the ALJ ignored the fact that psychological assessments are often based on subjective reports by necessity. *See Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016) ("But a psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning; there is no blood test for bipolar disorder."). "Mental-health assessments normally are based on what the patient says, but only ***after*** the doctor assesses those complaints through the objective lens of [his] professional expertise." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (emphasis added) (citing *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015)). The ALJ seemed to ignore evidence that Dr. Goebel did not just blindly accept Plaintiff's reports and instead used his expertise in evaluating whether to accept them and to what extent; indeed, Dr. Goebel wrote, "She appeared to be a reliable informant." R. 332. Additionally, Dr. Goebel was hired by the agency itself and thus was unlikely to exaggerate Plaintiff's symptoms. *See Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) ("[O]ne of them [is] an agency doctor unlikely therefore to exaggerate an applicant's disability…as the applicant is not his patient and favoritism with applicants would not go down well with the agency…") (citation omitted).

8

While the ALJ was not required to accept Dr. Goebel's opinion, as a trained physician he was "better positioned [than the ALJ] to discern true complaints from exaggerated ones." *Mischler*, 766 F. App'x at 375 (internal quotation marks and citation omitted). Further, as the Commissioner points out, the ALJ was permitted to consider whether the opinion was based on subjective allegations; however, the ALJ provided no explanation of why or how some limited medical evidence being available to Dr. Goebel equated with his opinion being based *only* on Plaintiff's allegations. Dkt. 18 at 7-8. There is no reason to think that Dr. Goebel did not also base his opinion on his observations of Plaintiff and the questions he asked her, which tested her ability to think, recall, and reason. *See, e.g., Aurand*, 654 F. App'x at 837 (holding that the ALJ's analysis of an expert opinion was insufficient partially because there was no reason to think that the opinion was not based on observation and mental status tests *in addition to* the plaintiff's subjective allegations) (emphasis added).

Finally, in assessing Dr. Goebel's opinion, the ALJ attempted to explain why she determined that Plaintiff's allegations were "extreme," but this explanation too is problematic, as it largely focused on Plaintiff's lack of treatment. R. 380. The ALJ was not permitted to draw inferences about Plaintiff's conditions from a lack of treatment unless the ALJ also explored the reasons why Plaintiff did not seek regular treatment. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). At no point in her decision did the ALJ engage with this issue, which is especially concerning given that the ALJ heavily relied on Plaintiff's lack of treatment at several points in her analysis. *See* R. 370, 375-6, 379, 381. The Commissioner asserts that the ALJ was permitted to consider Plaintiff's treatment gaps because there were multiple gaps, but this does not cure the ALJ's failure to explore the reasons behind those treatment gaps. Dkt. 18 at 12-13.

9

For all of the reasons above, the ALJ failed to minimally articulate her reasoning of Dr. Goebel's opinion. *See Aurand*, 654 F. App'x at 837. For that reason, Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security (dkt. 12) is GRANTED and the Commissioner's Motion for Summary Judgment (dkt. 17) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: July 24, 2024

BETH W. JANTZ

United States Magistrate Judge